

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| LORI SAYLOR, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 0:19-0548-MGL |
| | § | |
| KEMP CUSTOM HOMES, INC. d/b/a KEMP ROOFING & CONSTRUCTION, | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT**

### I.  INTRODUCTION

Pending before the Court is Plaintiff Lori Saylor's (Saylor) request for default judgment against Defendant Kemp Custom Homes, Inc. d/b/a Kemp Roofing & Construction (Kemp).  For the reasons stated below, Saylor's request will be granted.

### II.  FACTUAL AND PROCEDURAL HISTORY

"[Saylor] entered into a contract with Kemp to perform roof repairs on her home on or about December 28, 2015[,] for the amount of $17,350."  Compl. ¶ 26.  "[Saylor then] paid $8,500 in advance to Kemp pursuant to their agreement[,]" and "Kemp began work on [Saylor's] roof on or about March 9, 2016."  *Id.* ¶ 27.

Saylor, however, observed Kemp engaging in substandard work and made immediate and direct objections to Kemp regarding its work product.  Suppl. at 1.  "Kemp [then] ceased work on or about March 25, 2016[,]" and "made a demand on March 29, 2016[,] for the payment of a

balance [Saylor] did not owe on the project[,] . . . even though the work was not correct and/or not complete." Compl. ¶ 31.

When Saylor filed her complaint, "[t]he repairs [had] not been complete[d] and the roof of [Saylor's] house [had] been covered by tarps for an extended period of time." *Id.* ¶ 32. As a result, "[Saylor] struggled with protecting her house." Suppl. at 1. "[Saylor] was able to eventually afford the repairs to her home, and the cost of those repairs were $69,763.23[,] with credits applied for payments owed to Kemp." *Id.*

As is relevant here, Saylor filed a complaint alleging five causes of action against Kemp, including (1) a violation of the South Carolina Unfair Trade Practices Act (SCUTPA), (2) fraud, (3) negligent misrepresentation, (4) breach of contract, and (5) breach of contract with fraudulent intent. To date, Kemp has failed to file an answer to the complaint. On July 21, 2020, Saylor filed a request for entry of default against Kemp. That same day, the Clerk of Court filed an entry of default against Kemp. On September 4, 2020, Plaintiff filed a request for default judgement and supplemented the filing on January 9, 2021.

### III.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the process for obtaining a default judgement, creating a two-step process. "The first step is the entry of default, which must be made by the clerk '[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise.'" *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 130 (4th Cir. 2020) (quoting Fed. R. Civ. P. 55(a)). Upon entry of default, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Ryan v.*

*Homecomings Financial Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted). But, "a default is not treated as an absolute confession by defendant of his liability and of the plaintiff's right to recover." *Id*.

"The second step is the subsequent entry of default judgement," which may be done in one of two ways. *Fidrych*, 952 F.3d at 130. "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," then the clerk may enter judgment on the defendant's default. Rule 55(b)(1). If the plaintiff's claim is not for a sum certain, however, then it must be done by the Court. *See* Rule 55(b)(2) ("In all other cases, the party must apply to the court for a default judgment. . . .").

Because "a default is not treated as an absolute confession by defendant of his liability and of the plaintiff's right to recover," the Court must, upon request for judgement on the entry of default, "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in this action." *Ryan*, 253 F.3d at 780 (citations omitted). In other words, if this Court concludes the well-pleaded allegations of Saylor's complaint support the relief she seeks against Kemp, then, by reason of default, liability has been established.

A judgement of default, however, is not final without a determination of relief. *See Fidrych*, 952 F.3d at 130 (holding a default judgment for the plaintiff that determines liability but does not fix the amount of damages is not a final judgment because there can be no final judgment without a determination of relief). Therefore, if the Court determines liability has been established, the Court must then determine damages in accordance with Rule 55(b).

IV.     **DISCUSSION AND ANALYSIS**

As noted above, Kemp failed to file an answer to Saylor's complaint and the Clerk of Court filed an entry of default against it. Thus, by virtue of default, Kemp has admitted the allegations

3

set forth in Saylor's complaint are true, and Kemp is prohibited from contesting those facts as on appeal. *See Ryan*, 253 F.3d at 780 (holding that a "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgement, and is barred from contesting on appeal the facts thus established"). The Court will now address the five claims Saylor made against Kemp in the complaint.

### A.     *Saylor's South Carolina Unfair Trade Practices Act (SCUTPA) Claim*

The SCUTPA provides "[a]ny person who suffered any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages." S.C. Code Ann. § 39-5-140.

"To recover in an action under the [SC]UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). The second prong, an impact on public interest, can be satisfied "if the acts or practices have the potential for repetition." *Crary v. Djebelli*, 496 S.E.2d 21, 23 (S.C. 1998) (citation omitted).

By reason of Kemp's default, Saylor has established her claim under the SCUTPA, which is well-pleaded and supports the relief sought. Kemp held itself out as a licensed contractor with over $1,000,000.00 in liability insurance and used the phrase "licensed contractor," despite not having such a license or insurance. Based on these deceptive representations, Saylor contracted with Kemp to repair her home, but Kemp failed to finish the repairs, and, as a result, Saylor suffered actual damages. Accordingly, Kemp is liable to Saylor for damages caused by its

4

violation of the SCUTPA.

As discussed above, if the Court concludes liability has been established, then the Court must also determine damages. *See Fidrych*, 952 F.3d at 130 (holding that a default judgment for the plaintiff that determines liability but does not fix the amount of damages is not a final judgment because there can be no final judgment without a determination of relief).

"If a plaintiff's claim is for a sum certain or a sum that can be made certain by computation," default judgement may be entered by the clerk of court "on plaintiff's request, with an affidavit showing the amount due." Rule 55(b)(1). When the damages amount is not for a sum certain, however, entry of default judgement must be completed by the Court pursuant to Rule 55(b)(2), which provides that "[t]he court may conduct hearings . . . when . . . it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Rule 55(b)(2).

Here, the Court concludes there is no need for an evidentiary hearing on the issue of damages because a decision can be properly reached on the basis of the uncontested pleadings and detailed affidavit submitted by Saylor outlining her damages. *See Anderson v. Found. For Advancement Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998) (holding "in some circumstances a district court entering a default judgement may award damages ascertainable from the pleadings without holding a hearing[.]"); *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 2014) (holding that "a default judgment may not be entered without a full hearing unless the damages are liquidated or otherwise uncontested[.]").

Saylor's affidavit demonstrates she suffered monetary damages in an ascertainable amount as a result of Kemp's unfair or deceptive practices, and the amount of damages suffered is ascertainable in the sum of $69,763.23. The Court has reviewed Saylor's submissions and

5

determined they adequately support her claims and provide a reasonable basis for determining relief.

In addition to actual damages, Saylor maintains she is entitled to treble damages under the SCUTPA due to Kemp's willful violation of the Act, and she submitted supplemental briefing with attachments supporting her position. The Court will now address that issue.

### 1.     *Treble Damages Under the SCUTPA*

"The [SC]UTPA provides for treble damages upon a finding of a willful violation of the Act." *Maybank v. BB&T Corp.*, 787 S.E.2d 498, 517 (S.C. 2016) (citing S.C. Code Ann. § 39-5-140(a)). "A willful violation is defined by statute as occurring 'when the party committing the violation knew or should have known that his conduct was a violation of [the SCUTPA].'" *Id.* (quoting S.C. Code Ann. § 39-5-140(d)). "Thus, if a person of ordinary prudence who was engaged in trade or commerce could have ascertained that his conduct violated the [SC]UTPA, such conduct is willful within the meaning of the statute." *Id.* (citing *Wright*, 640 S.E.2d at 498).

As alleged by Saylor, Kemp held itself out as a licensed contractor and used the phrase "licensed contractor" despite not having such a license. Compl. ¶ 3. The license number #49228 utilized by Kemp in its advertisements fails to correspond to a valid license in the name of Kemp or any entity related to Kemp in South Carolina. *See* Suppl., Ex. 1. A South Carolina license in the name of the owner of Kemp, or in the name of Kemp Custom Homes, is nonexistent. *See id.*, Ex.'s 2, 3. There was, however, a license in the name of a Joseph Kemp for Kemp Roofing that lapsed in 2011. *See id.*, Ex. 4. The website listed on Kemp's work trailer also repeated the same false statement it was licensed and insured. *Id.* at 4 (showing a picture of Kemp's work trailer).

Here, by reason of Kemp's default and based on the facts discussed above, Kemp has admitted to Saylor's allegations of willfulness under SCUTPA. These allegations establish

Kemp's false representations were intentional, deliberate, and systematic, designed to have potential customers, like Saylor, rely on these credentials and hire Kemp to perform work. For these reasons, the Court concludes a willful violation of the South Carolina Unfair Trade Practices Act occurred and holds that the trebling of the damages against Kemp to be appropriate, for a total award of $209,289.69.

### B.     *Saylor's Fraud Claim*

"In order to establish a claim for fraud in the inducement to enter a contract, a party must establish the following by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Turner v. Milliman*, 708 S.E.2d 766, 769 (S.C. 2011) (citation omitted).

By reason of Kemp's default, Saylor has established her claim of fraud, which is well-pleaded and supports the relief sought. The facts alleged in Saylor's uncontested complaint demonstrate Kemp represented it was a licensed contractor, had the training and skill to perform roof repairs in compliance with industry standards, and held at least $1,000,000 in general liability insurance. Compl. ¶ 66. Based on these representations, Saylor entered into a contract with Kemp. These representations, however, turned out to be "materially false[,]" *id*. ¶ 67, and Saylor suffered damages as a result of Kemp's sub-standard work.

For these reasons, the Court concludes Kemp is liable to Saylor under a claim of fraud and responsible for the damages caused by its fraudulent representations.

### C.    *Saylor's Negligent Misrepresentation Claim*

"To establish liability for negligent misrepresentation, the plaintiff must show by a preponderance of the evidence: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation." *Turner*, 708 S.E.2d 7 at 769 (citations omitted). "Ordinarily, to be actionable, a statement must relate to a present or preexisting fact[] and cannot be predicated on unfulfilled promises or statements as to future events." *Id*. at 770 (citing *Davis v. Upton*, 157 S.E.2d 567, 568 (S.C. 1967)).

In the present case, Saylor alleges Kemp: made materially false representations it was a licensed contractor with at least $1,000,000 in liability insurance; failed in its duty to provide truthful information to her; and that she relied on those representations, suffering damages as a result of her reliance. By reason of default, Kemp has admitted the truthfulness of these allegations.

Accordingly, the Court concludes Saylor's negligent misrepresentation claim is well-pleaded and supports the relief sought; therefore, Kemp is liable to Saylor for the damages caused by its negligent misrepresentation.

### D.    *Saylor's Breach of Contract Claim*

"[A] contract is formed when a legitimate offer is accepted, accompanied by a valuable consideration." *Ahrens v. State*, 709 S.E.2d 54, 64 (S.C. 2011). "The elements for a breach of

contract are the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) (citation omitted).

"[O]ne who seeks to recover damages for the breach of a contract, to which he was a party, must show that the contract has been performed on his part, or at least that he was at the appropriate time able, ready and willing so to perform it." *Parks v. Lyons*, 64 S.E.2d 123, 126 (S.C. 1951). "Damages recoverable for breach of contract either must flow as a natural consequence of the breach or must have been reasonably within the parties' contemplation at the time of the contract." *Kline Iron & Steel Co. v. Superior Trucking Co.*, 201 S.E.2d 388 (S.C. 1973).

In the instant matter, Kemp admitted to breach of contract by virtue of his default. Saylor and Kemp entered into a valid contract whereby Kemp made an offer to perform roof repairs in exchange for payment from Saylor, and she accepted. Hence, a contract was formed. Kemp subsequently breached that contract, and Saylor suffered damaged as a result of Kemp's breach.

Pursuant to their agreement, Saylor made an initial payment to Kemp to begin work, and the remainder was to be paid upon completion. Kemp, however, failed to finish repairs on the roof, ceased work mid-project, and demanded full payment before it was due. As such, the Court concludes Saylor satisfied her obligations under the contract, but Kemp breached the contract by ceasing work and demanding payment before fulfilling its duties therein. Due to Kemp's breach of contract with Saylor, she suffered damages in an ascertainable amount.

Consequently, the Court concludes Saylor's breach of contract claim is well-pleaded and supports the relief sought, making Kemp liable to Saylor for the damages caused by its breach of contract.

### E. *Saylor's Breach of Contract Accompanied by a Fraudulent Act Claim*

"South Carolina has long recognized a plaintiff's right to recover punitive damages for

9

breach of contract accompanied by a fraudulent act." *Lister v. NationsBank of Delaware, N.A.*, 494 S.E.2d 449, 454 (S.C. Ct. App. 1997) (citing *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502, 503 (S.C. Ct. App. 1985)). "However, mere breach of contract, even if willful or with fraudulent purpose, it not sufficient to entitle a plaintiff to go to the jury on the issue of punitive damages." *Id*. (citations omitted). "It is the accompanying fraudulent act that allows recovery for punitive damages." *Id*.

In light of the treble damages awarded to Saylor under her SCUTPA claim, however, the Court need not address the issue of whether Saylor's breach of contract accompanied by a fraudulent act claim entitles her to punitive damages. *See Smith v. Strickland*, 442 S.E.2d 207, 210 (S.C. Ct. App. 1994) ("As with actual damages, a plaintiff can recover damages that are punitive in nature only once, either as expressly designated punitive damages or as trebled damages, where their recovery concerns a single wrong.").

Here, all of Saylor's claims against Kemp stem from a single transaction, the contract to repair her roof. As such, an award of punitive damages in addition to trebling damages under SCUTPA would constitute a double recovery for Saylor and be erroneous. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 528–29 (4th Cir. 1997) (holding that a punitive damages award in addition to trebling damages "was erroneous because it represented a double recovery").

## V.     CONCLUSION

For the reasons set forth above, this Court concludes Kemp is liable to Saylor on the claims in her complaint and further finds Saylor is entitled to recover damages from Kemp as follows: (a) actual damages in the amount of $69,763.23, as well as a trebling of these damages for Kemps'

willful violation of the South Carolina Unfair Trade Practices Act, or a total award of damages of $209,289.69. Saylor is also found to be entitled to an award of her reasonable attorney's fees and costs incurred in the prosecution of this action pursuant to the South Carolina Unfair Trade Practices Act. Saylor's counsel shall file any motion for attorney's fees and/or any bill of costs with this Court within ten days if she seeks such, and if so, shall comply with Local Civil Rule 54.02.

**IT IS SO ORDERED**.

Signed this 20th day of July, 2021, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE